We will move to our fifth case this morning, James Hulce v. Zipongo. Mr. Misny. Good morning, Your Honors, and may it please the courts. I'm Jonathan Misny, and I'm here on behalf of the plaintiff appellant, James Hulce. This case presents a straightforward issue of statutory interpretation, and the proper analysis is not complicated. Food Smart intended for the calls and texts that issue to directly cause purchases of its services to take place, and nothing more than that is required for the calls to be telephone solicitations under the Telephone Consumer Protection Act. They fall squarely within the statutory definition. The key language in the statute here is for the purpose of encouraging the purchase of goods or services. The statute doesn't refer to any particular person that has to be encouraged. It just says the purchase of. And so that means the court is just supposed to look at whether a purchase transaction is being encouraged. So here, if the plaintiff— Well, that wasn't happening here. The solicitations were for free services. Well, actually, the district court did recognize that the transaction at issue here would have been a purchase or it could have at least reasonably been characterized as a purchase. And so how the transaction would have worked is if the plaintiff found the sales pitch to be appealing, he would have scheduled a telenutrition appointment with Food Smart. He would have received that service from Food Smart. For free. The payment would not come out of his pocket. That's correct. That means for free. Sure. And he would have paid for those services using his insurance. And so the way that that would work is Food Smart would submit a claim, a specific and separate claim for that specific visit, submit that claim to the plaintiff's insurance company, and then the plaintiff's insurance company would pay the money on the plaintiff's behalf. And so we believe that that is reasonably characterized as a purchase, and the district court agreed with us that that could be reasonably characterized as such. The effect might be a purchase, but the encouraging, although it doesn't say who you have to encourage, how is the company encouraging anybody to purchase here as opposed to just the effect being the purchase? I think that's the wrong question, respectfully, to ask whether a person, whether anybody is being encouraged to purchase. Anybody, anything, any company. They're not encouraging anyone or anything to purchase. Well, I think it certainly encourages the plaintiff to use Food Smart services.  And the direct result of that and the necessary result. It's not several steps removed. It's the necessary result of that is a purchase transaction takes place where the insurer is billed and pays for it. Again, it's the effect. I'm having a hard time seeing how the encouraging of the purchase comes in. It's the effect, no doubt. Well, it comes part and parcel with the use of the service. It's all part of the same transaction. It should be looked at as a multi-party transaction where you have both the plaintiff and his insurance company as joint purchasers. Because the plaintiff is the one that is receiving the services, and then the insurer is the one that is not receiving the services itself, but it's paying the money on the behalf of the consumer. Is the structure of the sentence and the passive voice important? It's extremely important.  Because there's no definition in the TCPA of purchaser. It's not a relevant question, and that's not a term that the court should be trying to decide whether the plaintiff or insurance company is the purchaser. It's broadly written that way because regardless of whether it encourages a person to pay money, if the purpose of the calls and texts is to increase sales or to promote sales, and that's the design of the communication and that's the purpose of the message, then it's telemarketing. That's not what the definition says. The definition of telephone solicitation is a telephone call or a message for the purpose of encouraging the purchase of goods or services. Nobody's being encouraged to purchase anything in the messages that your client received. He's being offered free services. So we believe that if a call is designed to encourage purchases, and we've cited numbers back and forth. It's encouraging the sign-up for free services. It's not encouraging the purchase. It's not encouraging the plaintiff himself to pay money out of his pocket. It is encouraging a purchase transaction to take place. The services are not being provided completely for free. The money may not be coming out of the plaintiff's pocket, but they're not free in the sense of they're still billing for these services and they're still collecting money for those specific services. It's not some sort of payment pursuant to a contract or anything like that. The contract, all it says is telenutrition visits will be billed separately through claims. And so it's just a separate bill that FoodSmart is sending to the insurance company. So it is a purchase of its services, even though the money doesn't come out of the plaintiff's pocket. And I think it's also important to consider the context of these calls. And that's part of the inquiry as well, in addition to just the content. And here, the context of these calls is that they were part of an aggressive campaign. The plaintiff received about 20 phone calls and texts. It was part of this multimodal marketing campaign where the plaintiff received emails, flyers, and direct mailings. And everyone involved with this campaign is a marketing person. FoodSmart even calls the texts and calls themselves, marketing. And I think that's a significant point because, really, the definition of telephone solicitation, it all goes back to what a consumer's expectations are when they sign up for the do-not-call list. Because these calls aren't necessarily prohibited for everyone. It's just people that sign up for the do-not-call list. And I think here you have a consumer that recognized that these calls were telemarketing, and a particularly aggressive form of telemarketing. You have the company that's sending the calls, calling the marketing, and recognizing them as such. And so I think the definition of telephone solicitation should comport to what a reasonable consumer and reasonable laypeople are understanding to be telemarketing. And with that, I see I have about two minutes left. And I'd like to save that for rebuttal unless there's any more questions. That's fine. Thank you. Mr. Watstein? Thank you, Your Honors. May it please the Court. Ryan Watstein for Appellant Foodsmart. Imagine Charlie is a 70-year-old diabetic below the poverty line. He's getting harassed by companies trying to sell him auto warranties or widgets, whatever the case might be. So he goes and he puts his number on the national do-not-call registry. His diabetes gets worse. He's at the doctor two years later consulting with him about potentially getting his foot amputated. His doc looks at the file and says, you should have taken advantage of FoodSmart's free nutrition consultations through your BadgerCare program. The state pays 100%. Charlie says, well, why didn't anybody tell me about that? The doctor says, well, you put your number on the national do-not-call registry. Charlie says, well, what are you talking about? I thought you just said this was a free public benefit paid for 100% by BadgerCare. Charlie would be right to push back on his doctor because no reasonable English-speaking person would think that by putting their number on the national do-not-call registry, that prohibits telephone solicitations, or as it says right on the front page of the do-not-call.gov sales calls, that they were opting out of non-pretextual calls about free services that serve a public benefit. That's because no normal English-speaking person thinks that the FoodSmart's calls were to encourage the purchase of services. Charlie couldn't purchase them. And the calls were not to CCHP, which didn't need any encouragement because they wanted FoodSmart to sign people up. That was the whole reason they contracted with FoodSmart. A contractually obligated party doesn't need encouragement to comply with a condition that triggers payment. That's a really strange way to talk. It's not satisfying to Charlie to hear, oh, well, the legislator meant to use an inapplicable synonym to encourage. They actually meant stimulate, kind of like the sun stimulates photosynthesis. That's, again, appellant urges the court to adopt a synonym of encouragement that simply doesn't apply when you read the plain text of the statute. What's your response to the passive voice argument, that the viewpoint doesn't change within the statute, therefore the language could include more than just a call to buy something? Sure. So it's twofold, Your Honor. The first thing I'd like to say is that that interpretation is foreclosed by two recent decisions of this court that were decided after our district court briefing was closed. That's the Ambassador Animal Hospital case and the Smith v. First Hospital Labs case. Those were TCPA blast facts cases. They did look at a different definition. They looked at the definition of unsolicited advertisement, but it also uses the passive voice. I'll quote it for the court. An unsolicited advertisement is any material advertising the commercial availability or quality of any property, goods or services, which is transmitted to any person. Same key passive voice language. And here's what this court held. This court said a bare offer for a free good or service is not an advertisement unless the facts also promote something that the reader can acquire in exchange for consideration. The court also said the facts must directly or indirectly encourage recipients to buy goods, services, so on and so forth. So the upshot of that is that if there was a fax that said, you know, dinner is free to vets, veterinarians, but $100 for everyone else wouldn't be an ad if it was sent to the vets because it was free to the vets. And so what is this? If you apply the same statutory construction, which you must, you come to the same conclusion here that the recipient must be the one that is encouraged to make a purchase. So that's the first response to your Honor's question. The second is even if the focus didn't have to be on the recipient, which I think the plain language suggests that it does, there would still have to be encouragement. And again here, there was no encouragement to anyone. There wasn't encouragement to CCHP because the call wasn't to CCHP. And CCHP didn't need any encouragement because they wanted Food Smart to sign up as many people as possible because the undisputed record evidence is that this program saved lives, increased health outcomes, and reduced costs for the ultimate payer, which was the taxpayer. So the hypothetical that I started with also shows something else. And I recognize courts are—appellate courts are reluctant to engage in a First Amendment analysis. But I really, really believe that this hypothetical demonstrates not just why our proposed statutory interpretation is correct, but why appellants' proposed statutory interpretation cannot pass even intermediate scrutiny. Now, we think strict scrutiny applies, but let's assume for purposes of my argument that only intermediate scrutiny applies. The restriction on speech—so here the definition of telephone solicitation—has to be no greater than necessary to further a substantial government interest. Well, what's the substantial government interest? There's no evidence at all in the legislative record that there was a substantial interest in stopping free public benefit calls. So let's assume that the substantial interest we're talking about is privacy. Plaintiff's proposed definition is far more restrictive than necessary to advance the interests of privacy. And the existence of the registry proves this point. Why do I say that? Because imagine a registry that has two checkboxes. One checkbox says, put your number here and check this box if you don't want to receive sales calls. The next checkbox says you can also opt out of free public benefit calls that are trying to urge you to take advantage of a public benefit. That is a simple solution that the legislature could have put in place that would pass intermediate scrutiny, but the interpretation urged by the appellant cannot pass intermediate scrutiny. If we agree with your interpretation, are we creating a loophole for companies where you could have somebody calling and offering something free and then the effect on the road would be the purchase of that item by somebody else? No, Your Honor. That's a good question, but the answer is no because pretextual calls could still fall in the definition of a telephone solicitation. Because if Company X makes a call, let's say Food Smart made a call, but Discovery showed that what they're really trying to do is sell some sort of supplemental product. So they get people in with the free telenutrition and then it's $9.99 a month after that. That would be a telephone solicitation. I think the case law is pretty clear on that, but that's just unequivocally not what happened here. A couple other things I'd like to point out. One, just so the record is clear because I think there was some confusion on this point during appellant's argument, it is undisputed that this is not an insurance plan that there was a co-pay paid for. In fact, Food Smart scrubs the Do Not Call Registry before it calls people who might have a premium because they're being extra safe and they're making the assumption that maybe for those calls where somebody has a premium, that could be considered a telephone solicitation. They don't for this most vulnerable population who is on a completely free plan. But the citation is Supplemental Appendix at 42. It's Mr. Halsey's deposition testimony. He says, and I quote, I did not pay any monthly premium for any BadgerCare Plus related health plans. So he really paid nothing. He could not pay for these services. Another point on your Honor's question about the loophole, the TCPA is a strange statute. It only restricts very specific types of communications that are covered by its plain text. There is a ton, as I'm sure everybody in this room knows from this last election cycle, there is a ton of communications that we might find very annoying, pernicious, that are not covered by the statute. And really the only question here is, is this free public benefit message that was sanctioned by the state of Wisconsin, they reviewed the scripts, was that a telephone solicitation under the plain language of the statute? Or even we would submit that it is not. I'll make one final point, and that is just looking at the dictionary definition. So Merriam-Webster gives encouraged four meanings, to inspire, to attempt to persuade, to stimulate, or to foster. It's clear that the only one that makes sense when you're reading this statute is persuade. What do telemarketers do? Do they persuade people to purchase, or do they try to stimulate economic activity? I mean, it's a pretty clear choice. And with that, I see my time is up, unless anyone has any questions. Thank you. Thank you, Your Honors. Mr. Misny, rebuttal. So Food Smart has referenced several times their calls being in the public good or for the public benefits. But there's a lot of for-profit entities out there in the health care industry that would say the same things about their products and services, and that they are helpful to the health of individuals. It doesn't mean that they're not subject to the do-not-call regulations. And so I think if the case is affirmed, there could be a real loophole here for a lot of health care-type entities, specifically a drug company or something, to sort of work around the language of the statute by making the content seem like it's something that they're receiving for free, where it's really encouraging the purchase of the seller's services. Mr. Misny, does there have to be some causal link between the soliciting phone call and the ultimate purchase? And if so, how would that causation requirement be described or structured? I think there absolutely needs to be a causal link, and I think it needs to be described as a direct causal link. A lot of the case law discusses cases where there's really more of an attenuated sort of link that's several steps down the stream of commerce. And at a certain point, it does become too attenuated. But I think if a call is directly causing or the purpose is to directly increase purchases, then that's a sufficient causal link. Do we base that on the number of contacts or the nature of the contacts? The purpose of the contacts, and I think the number of the contacts is a relevant factor to be considered, because typically if you're just offering something that's free and there's not a benefit in terms of revenue to the company, you're not going to spam somebody with 20 calls over and over. Where in the statute is there a causation requirement? Well, it says encourage the purchase of, and so I think just the mere fact that encourage is linked to a purchase, that implies a direct causation requirement. There's no proof that a telemarketing call actually caused a purchase in order for there to be liability. There's no way for the plaintiff to receive this service without there being a purchase. I'm not talking about the facts of this case. I'm talking about the statutory interpretation issue. There's no causation element of a violation of this statute. Right. You just look at what the purpose of the caller is. And so if the purpose that the caller has is to cause a purchase to occur, then that's what you look at. You don't look at the actual facts of, you know, was there a purchase or not, or whether there had been a purchase. It's what was the caller's intention in making the call. And I see that I'm out of time. If there's any further questions. Thank you. Our thanks to all counsel. The case is taken under advisement.